IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAVIS EDDIE WILSON

      Petitioner,

v.                                                          Civ. No. 12-1224 JAP/GBW

TIM HATCH and ATTORNEY GENERAL
FOR THE STATE OF NEW MEXICO,

      Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

      This matter is before the Court on Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, *docs. 2 & 7*; Petitioner's Motion for Discovery, *doc. 22*; and Respondents' Motion to Dismiss, *doc. 14*.  Because I find that Petitioner is not entitled to discovery or an evidentiary hearing, I recommend that the Court deny his motion for discovery.  Of Petitioner's six habeas claims, I find that one is not cognizable before this Court and the remainder are meritless.  I therefore recommend that the Court grant Respondent's Motion to Dismiss and deny Petitioner's petition.

I.     FACTUAL AND PROCEDURAL BACKGROUND

     **A.  The underlying trial**

      Early in the morning of April 14, 2002, Kelly Knoll was murdered in the Kirtland Addition neighborhood of Albuquerque, New Mexico.  *Doc. 11*, Ex. O at 2, Ex. M at 1.

1

Mr. Knoll was beaten, lifted into the bed of a white Mazda pickup truck, driven to a different location, and shot five times. *Doc. 11*, Ex. O at 2. Petitioner Davis Wilson and Jarrell Frazier were charged as co-defendants. *Id.* at 2.

Judge Albert Murdoch presided over Petitioner's May 15, 2002, preliminary hearing. *Preliminary Hearing Transcript* (May 15, 2002) at 3:15-24 [hereinafter *Prelim. Hrg. Tr.*]. At the beginning of the hearing, Petitioner's counsel, Jonas Rane, moved for Judge Murdoch to recuse himself pursuant to New Mexico's statutory provision for peremptory recusal. *Doc. 11*, Ex. O at 4-5, Ex. DD at 10; *see also Prelim. Hrg. Tr.* at 3:25-11:8. Judge Murdoch denied the motion. *Doc. 11*, Ex. O at 4-5; *Prelim. Hrg. Tr.* at 13:12-14:6. Mr. Rane later withdrew as counsel for Petitioner and was replaced by Darryl Bouchard. *See Motion to Sever Hearing Transcript* (Dec. 4, 2003) [hereinafter *M. Sever Tr.*].

On December 4, 2003, Petitioner moved to sever his trial from that of Mr. Frazier. *Doc. 11*, Ex. O at 9, Ex. DD at 7; *M. Sever Tr.* at 3:23-25. He argued that statements made by Mr. Frazier's girlfriend, Shawntell Harrison, during a police interview and at Mr. Frazier's preliminary hearing that implicated Petitioner were inadmissible against Petitioner. *M. Sever Tr.* at 8:14-11:11. He contended the best solution to avoid prejudicing Petitioner was to sever the trials. *Id.* at 11:9-11:24. Judge John Brennan, the trial judge, denied the motion but ordered the prosecution to use leading questions to prevent Ms. Harrison from implicating Petitioner in her testimony. *Id.* at 22:10-20; *Doc. 11*, Ex. O at 9.

2

On February 9, 2004, the first day of trial, Mr. Frazier moved for severance of his and Petitioner's trials. *Trial Transcript* [hereinafter *Trial Tr*.] (Feb. 9, 2004) at 5:16-20.[1] Judge Brennan again refused to sever the trials.  *Id*. at 11:21-12:1.

At trial, the prosecution put on twelve witnesses—eight law enforcement officers, a medical investigator, two eyewitnesses, and Ms. Harrison.  *See Trial Tr*. (Feb. 10-12).  Of the two eyewitnesses, one—Justina Griffin—testified that she could not see the faces of the men attacking Mr. Knoll and could only identify them as black men. *Trial Tr*. (Feb. 10) at 72:20-25, 74:2-13, 79:1-2.  The other, Anthony Edwards, identified Mr. Frazier and Petitioner as the culprits, but admitted that he was extremely drunk when he witnessed the beating.  *Id*. at 94:24-25, 96:13-15, 97:4-22, 105:10-15, 111:14-112:17, 114:17-116:4, 125:4-9.  Mr. Edwards testified that he identified Petitioner and Mr. Frazier in part based on the white truck at the scene of the attack, which he had seen them in earlier that day.  *Id*. at 114:14-16, 116:5-11, 120:6-10, 135:6-17.

Numerous police officers testified that much of the forensic evidence collected from Mr. Knoll's body and at the scenes of the beating and shooting was never tested for DNA.  *See, e.g.*, *Trial Tr*. (Feb. 11) at 18:15-19-19, 23:16-24:9, 25:1-14, 60:7-17, 106:11-16109:21-110:3.  However, Petitioner's fingerprints were found on the door frame of the white pickup truck used in the crime.  *Id*. at 72:17-73:8; *Trial Tr*. (Feb. 12) at 59:25-60:5. At the close of the State's case, Petitioner and Mr. Frazier moved for a directed verdict,

---

[1] The trial lasted four days, February 9-12, 2004.  I use the date to distinguish the transcripts for each day.

arguing that there was no evidence linking them to the murder. *Trial Tr*. (Feb. 12) at
82:16-88:20; *Doc. 11*, Ex. O at 30. Judge Brennan denied the motion. *Trial Tr*. (Feb. 12) at
88:21-24; *Doc. 11*, Ex. O at 30.

On February 13, 2004, the jury convicted Petitioner of Felony Murder,
Kidnapping (Victim not Freed in a Safe Place and/or Great Bodily Harm Inflicted),
Conspiracy to Commit Kidnapping (Victim not Freed in a Safe Place and/or Great
Bodily Harm Inflicted), Aggravated Battery (Great Bodily Harm), Conspiracy to
Commit Aggravated Battery (Great Bodily Harm), two counts of Tampering with
Evidence, and Conspiracy to Commit Tampering with Evidence. *Doc*. 11, Ex. A. On
May 28, 2004, Petitioner was sentenced to life plus twenty-one years, of which nine
were suspended for a total of life plus twelve years. *Id*. at 4; *Sentencing Transcript* (May
28, 2004) at 15:21-19:2 [hereinafter *Sentencing Tr*.].

The following day, May 29, 2004, Judge Brennan was arrested for the possession
of cocaine after police stopped him at a sobriety checkpoint. *Doc*. 11, Ex. R, attach. no.
11. He resigned from the bench shortly afterwards. *Id*., attach. no. 16.

**B. The state court appeal**

On March 5, 2004, Petitioner filed a Provisional Notice of Appeal to preserve his
right to appeal without divesting the district court of its jurisdiction to consider post-
judgment motions. *Doc. 11*, Ex. C. On May 18, 2005, the Supreme Court of New Mexico
granted Petitioner's motion for an extension of time to file post-judgment motions in the

trial court and a statement of issues in the Supreme Court, *id*., Ex. D, but dismissed the case on January 15, 2008, for failure to perfect an appeal, *id*., Ex. G.  Petitioner then moved on September 17, 2008, to reinstate his appeal.  *Id*., Exs. I, J.

Petitioner filed his appellate brief in chief in the Supreme Court on January 20, 2009, *id*., Ex. L, and on May 4, 2009, Respondents filed their answer, *id*., Ex. M.  On December 14, 2009, the Supreme Court vacated Petitioner's kidnapping conviction as violative of double jeopardy because kidnapping, as the predicate felony for Petitioner's felony murder conviction, is subsumed into that conviction.  *Id*., Ex. O at 4.  The court affirmed the remaining convictions.  *Id*., Ex. O.  On March 26, 2010, Petitioner was resentenced to life imprisonment.  *Id*., Ex. Q.

On October 8, 2010, Petitioner filed a petition for writ of habeas corpus in the state trial court, in which he requested an evidentiary hearing.[2]  *Id*., Ex. R.  Petitioner filed two supplements to the petition—one on February 3, 2011, and one on August 26, 2011.  *Id*., Exs. T, V.  On May 2, 2011, the State responded to the petition. *Id*., Ex. U.  The court did not conduct an evidentiary hearing and, on December 6, 2011, summarily dismissed the petition.  *Id*., Ex. W.  Petitioner filed a motion to reconsider the dismissal on January 4, 2012, and the State responded on February 3, 2012.  *Id*., Exs. X, Y.  The court denied the motion on May 15, 2012.  *Id*., Ex. AA.

---

[2] Petitioner filed a second habeas petition in trial court on November 5, 2010.  *Doc. 11*, Ex. S.  This petition appears identical to the October 8 petition except that it does not include the many exhibits attached to the October 8 petition.

Petitioner then filed a petition for writ of certiorari in the New Mexico Supreme Court contending that he was entitled to an evidentiary hearing before the trial court. *Id.*, Ex. BB. *Id.* The Supreme Court summarily denied the writ petition on July 18, 2012. *Id.*, Ex. CC.

### C. The federal petition

Petitioner filed the instant petition under 28 U.S.C. § 2254 on November 9, 2012. *Doc. 2.* Respondent answered on February 15, 2013, and subsequently filed a motion to dismiss on March 5, 2013. *Docs. 11, 14.* On March 22, 2013, I issued my first Proposed Findings and Recommended Disposition (PFRD), finding that three of Petitioner's claims were unexhausted rendering his petition mixed. *Doc. 18* at 10-14. I recommended that the Court allow Petitioner to voluntarily dismiss his unexhausted claims or provide evidence demonstrating exhaustion. *Id.* at 14-16. On April 5, 2013, Petitioner voluntarily dismissed the unexhausted claims, *doc. 20*, and on April 18, 2013, the Court adopted my PFRD, *doc. 21*. On April 24, 2013, Petitioner filed a discovery motion requesting that this Court order that the State's forensic evidence, including hair and blood samples and palm prints, be examined. *Doc. 22.*

## II. PETITIONER'S CLAIMS

In his § 2254 petition, Petitioner requests relief on the following six grounds:

1. Judge Murdoch erred in failing to recuse himself from presiding at the preliminary hearing.

2.  Judge Brennan erred in failing to recuse himself from presiding at trial because of

his cocaine addiction.

3.  The trial court erred in refusing to sever Petitioner's trial from co-defendant

Frazier's trial.

4.  The trial court erred in failing to enter a directed verdict in favor of Petitioner.

5.  Ineffective assistance of trial counsel due to counsel's failure to

a.  Conduct an adequate pre-trial investigation, including failing to interview

and prepare expert and lay witnesses and to inquire into the identification

of Plaintiff's truck;

b.  Perform effectively prior to trial, including failing to object to the trial

court's jurisdiction and file pretrial motions; and

c.  Perform effectively at trial, including failing to (1) bring a *Batson* challenge

(2) call witnesses on Petitioner's behalf, (3) allow Petitioner to testify, (4)

make timely and appropriate objections, (5) cross-examine and impeach

State witnesses, and (6) preserve Petitioner's Confrontation Clause rights.

6.  Ineffective assistance of appellate counsel due to counsel's

a.  Failure to perfect the appeal;

b.  Failure to relinquish case files when requested by Petitioner; and

     c.   Conflict of interest arising out of Timothy Padilla's representation of both

         counsel regarding a disciplinary complaint filed by Petitioner and Judge

         John Brennan, who presided over Petitioner's trial.

## III.   PETITIONER IS NOT ENTITLED TO DISCOVERY OR AN EVIDENTIARY HEARING

Petitioner contends that he requires discovery and an evidentiary hearing to obtain additional evidence that will exonerate him.  *Doc. 2* at 21; *Doc. 7*, Ex. 1 at 3, 15, 27; *Doc. 22* at 3.  In particular, he argues that this Court should order the forensic evidence recovered from Mr. Knoll's body and the crime scenes to be tested for DNA pursuant to Rule 6 of the Rules Governing § 2254 Cases.[3]  *See doc. 22* at 2-3.

In *Cullen v. Pinholster*, the Supreme Court held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  131 S. Ct. 1388, 1398 (2011); *see also Black v. Workman*, 682 F.3d 880, 895 (10th Cir. 2012) (extending *Cullen* to claims reviewed under § 2254(d)(2)).  Here, the New Mexico Supreme Court adjudicated Petitioner's appeal on the merits as evidenced by its lengthy and reasoned decision.  *Doc. 11*, Ex. O.  Although the trial court and Supreme Court dismissed Petitioner's habeas petition and petition for writ of certiorari summarily, a summary dismissal is presumptively a dismissal on the merits. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) ("When a federal claim has been

---

[3] Petitioner suggests that none of the State's evidence was tested for DNA.  Although the trial transcript does not conclusively confirm this, during the trial numerous state witnesses denied knowledge of any DNA testing.  *See Trial Tr.* (Feb. 11) at 18:15-19-19, 23:16-24:9, 25:1-14, 60:7-17, 106:11-16109:21-110:3.

presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").  Thus, on review of Petitioner's § 2254 claims, this Court cannot consider evidence outside of that which was before the state courts, making an evidentiary hearing unnecessary and inappropriate.

The Supreme Court in *Cullen* addressed only evidentiary hearings and the Tenth Circuit has not yet considered *Cullen's* effect on Rule 6 discovery requests.  However, the Court's reasoning in *Cullen*—that § 2254 "requires an examination of the state-court decision at the time it was made"—extends to Rule 6 discovery motions.  *See* 131 S. Ct. at 1398.  Further discovery under Rule 6 would unearth evidence that was not before the state court and is therefore "irrelevant to § 2254[] review."  *Cullen*, 131 S. Ct. at 1400; *see also Tharpe v. Humphrey*, 2012 WL 174844, at *4 (M.D. Ga. Jan. 20, 2012) (extending *Cullen* to discovery requests under Rule 6); *Hurst v. Branker*, 2011 WL 2149470, at *7-*8 (M.D.N.C. June 1, 2011) (same); *Coddington v. Cullen*, 2011 WL 2118855, at *2-*3 (E.D. Cal. May 27, 2011) (same); *but see Rossum v. Patrick*, 659 F.3d 722, 737 (9th Cir. 2011) (Gertner, J., dissenting) ("By not purporting to change or overrule these [Rule 6 discovery] standards, the Court [in *Cullen*] did not intend to preclude [evidentiary] hearings in all cases.").  Because Petitioner's claims were decided on the merits and are

therefore governed by § 2254(d), this Court cannot consider new evidence, rendering any additional discovery futile.[4]

## IV.   COGNIZABLE CLAIMS

For a claim to be cognizable under § 2254, it must allege a constitutional violation or a violation of a "constitutional dimension"—that is, "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  *Hill v. United States*, 368 U.S. 424, 428 (1962); *Wainwright v. Goode*, 464 U.S. 78, 83 (1983).  Respondents argue that two of Petitioner's grounds for relief—that the trial court failed to direct a verdict and to sever the trial—are not cognizable because they allege only errors of state law.  I find that both of those grounds allege constitutional violations and are therefore cognizable before this Court.  However, Petitioner's claim against Judge Murdoch is not.

### A.  The trial court's failure to direct a verdict

Petitioner argues that the trial court erred in failing to grant his motion for a directed verdict at the close of the State's case because the evidence against him "was

---

[4] Even if *Cullen* did not bar his Rule 6 discovery request, Petitioner has not met the good cause standard set forth in *Bracy v. Gramley*, 520 U.S. 899 (1997).  Rule 6 permits a judge to "authorize a party to conduct discovery under the Federal Rules of Civil Procedure" for "good cause."  Rule 6(a), Rules Governing § 2254 Cases.  "Good cause is shown if the petitioner makes a specific allegation that shows reason to believe the petitioner may be able to demonstrate he is entitled to relief."  *LaFevers v. Gibson*, 182 F.3d 705, 723 (10th Cir. 1999) (citing *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).  Petitioner has not made this showing: even if this Court were to order the testing of the forensic evidence and the results indicated that the hair, blood, and palm prints did not belong to Petitioner, these results would not exonerate Petitioner because they do nothing to undermine the key evidence connecting Petitioner to the crime—namely, Anthony Edwards' eyewitness testimony and Petitioner's fingerprints found on the white pickup truck.

shakey at best." *Doc. 7*, Ex. 1 at 15.  Respondent contends that because a directed

verdict in state court is governed by state procedures, Petitioner's claim "is an issue of

state law that cannot be raised on habeas review." *Doc. 15* at 6.

"A federal court may not issue the writ [of habeas corpus] on the basis of a

perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also* 28 U.S.C. §

2254(d)(1).  Thus, to the extent that Petitioner challenges the trial court's application of

state law governing directed verdicts, this claim must be denied.

However, the Tenth Circuit has recognized that a claim alleging that the trial

court improperly failed to direct a verdict is essentially a due process claim that the

evidence against the defendant was insufficient to support the verdict.  *Wright v. Hines*,

42 F. App'x 375,  376 (10th Cir. 2002); *see also Lawrence v. Jones*, 2011 WL 5086348, at *3-*4

(N.D. Okla. Oct. 26, 2011).  Petitioner's petition makes clear that his directed verdict

claim challenges the sufficiency of the evidence.  *See doc. 7*, Ex. 1 at 15 ("Both lines of

evidence was [sic] shakey at best.").  Therefore, the claim is cognizable before this

Court.

### B.  The trial court's failure to sever the trials of Petitioner and his co-defendant

Petitioner claims that the trial court erred in failing to sever his trial from that of

his co-defendant, Jarrell Frazier.  *Doc. 7*, Ex. 1 at 16.  Respondent argues that severance

of trials is solely a matter of state law.  *Doc. 15* at 6.  It is true that "[w]hether the trial

court erred in denying severance is generally a question of state law that is not

cognizable on federal habeas appeal." *Cummings v. Evans*, 161 F.3d 610, 619 (10th Cir. 1998).  However, failure to sever can rise to the level of a constitutional matter if "there is a strong showing of prejudice caused by the joint trial."  *Id*.  Since the determination of whether Petitioner's severance claim is cognizable turns on a consideration of the merits, I will address this claim below.

### C.  Judge Murdoch's failure to recuse

Petitioner argues that Judge Murdoch's failure to recuse himself from presiding over Petitioner's preliminary hearing (1) violated his equal protection rights; (2) constituted an inappropriate exercise of discretion; and (3) was not cured by the subsequent jury verdict at trial.  *Doc. 2* at 9.  The Court has dismissed Petitioner's equal protection claim because it was not exhausted.  *See doc. 18* at 12-13; *doc. 20*; *doc. 21*. Petitioner's remaining arguments are premised on state law.  He alleges that his motion to recuse Judge Murdoch was timely and appropriate under N.M. Stat. § 38-3-9, which allows a party "to exercise a peremptory challenge to the district judge" prior to a hearing or trial.  Petitioner contends that Judge Murdoch violated the statute by presiding over his preliminary hearing in spite of Petitioner's motion.  *Doc. 2* at 9; *Doc. 11*, Ex. L at 13-20.  Because Petitioner's claim is grounded solely in state law, it is not cognizable before this Court and should be dismissed.

## V.   PETITIONER'S COGNIZABLE CLAIMS ARE MERITLESS

### A.  Standard of review

A federal court can only grant the petition for writ of habeas corpus of a person in state custody if the state court adjudication of the petitioner's claims on the merits[5] resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The threshold question under § 2254(d)(1) is whether the law, as developed by the U.S. Supreme Court, is clearly established.  *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).  This determination is dispositive of the § 2254(d)(1) analysis—"without clearly established federal law, a federal habeas court need not assess whether a state court's decision was contrary to or involved an unreasonable application of such law."  *Id*. at 1017 (internal quotation marks omitted).  "[C]learly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice."  *Id*. at 1016.  If Supreme Court precedent "gives no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied

---

[5] As discussed above, a state court's summary dismissal of a claim is presumed to be an "adjudication on the merits" even if the court provided no reasoning to support its decision.  *Harrington*, 131 S. Ct. at 785. This presumption may be overcome only if "there is reason to think some other explanation for the state court's decision is more likely."  *Id*.  Petitioner has not argued, nor presented evidence indicating, that the trial court and New Mexico Supreme Court decisions on his habeas and writ petitions are not adjudications on the merits.  I must therefore presume that they are.

clearly established Federal law." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (citation omitted).

If the court determines that there is relevant and clearly established federal law, it must consider whether the state court decisions are "contrary to" or "unreasonable applications of" that law.  A state court decision is contrary to clearly established federal law if the state court (1) "applies a rule that contradicts the governing law set forth in Supreme Court cases," or (2) "confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent." *House*, 527 F.3d at 1018 (citing *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006)).  A state court decision is an unreasonable application of clearly established federal law if (1) "it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts," or (2) it "unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply." *Id*. at 1018.  An unreasonable application of law is "more than an incorrect application of federal law." *Id*. at 1019.

In order to succeed under § 2254(d)(2), a petitioner must show that the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "Section 2254(d)(2) . . . is a daunting standard—

one that will be satisfied in relatively few cases." *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011) (internal quotation marks omitted). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010). Rather, it is "whe[n] the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Byrd*, 645 F.3d at 1171-72.

### B. Petitioner's due process rights were not infringed by the trial court's failure to direct a verdict

As discussed above, Petitioner's claim that the trial court improperly failed to direct a verdict is essentially a due process claim alleging insufficient evidence to support the verdict. *Wright*, 42 F. App'x at 376. "In evaluating a sufficiency of evidence claim, the Supreme Court held that it is not for the court to inquire whether it believes the evidence established guilt beyond a reasonable doubt, but whether, after considering the evidence in the light most favorable to the prosecution, a rational jury could conclude that each element of the charged crime was proven beyond a reasonable doubt." *Id*. (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). The Tenth Circuit "has not yet determined whether . . . it reviews the state court's sufficiency-of-the-

15

evidence determination as a legal issue under 28 U.S.C. § 2254(d)(1), or a factual finding under § 2254(d)(2) and (e)(1)." *Id*.

The crucial dispute in this case was not whether the charged crimes were committed but whether Petitioner was one of the people who committed them. Petitioner argues that there were "only two lines of evidence" tying him to the crime, both of which were unreliable. *Doc. 7*, Ex. 1 at 15. The two lines of evidence were (1) the eyewitness testimony of Anthony Edwards and (2) the fingerprint comparison by Detective Herrera matching Petitioner's fingerprints to those found on the pickup truck used to transport Mr. Knoll. *Id*. However, on review of the evidence, it is not for this Court to ask "whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19. Rather, the question is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. In this case, viewing the evidence in the light most favorable to the prosecution, a rational jury could have found Mr. Edwards to be a credible witness who positively identified Petitioner as one of the men attacking Mr. Knoll. His identification of Petitioner was bolstered by the fingerprints found on the pickup truck and the testimony of Ms. Griffin, the other eyewitness. Moreover, the defense failed to put forward any conflicting evidence or an alibi that might lead the jury to question Petitioner's role in the crime. On appeal, the Supreme Court applied the correct law

16

and came to the conclusion "that there was sufficient evidence to support the jury's verdict." *Doc. 11*, Ex. O at 30-31.  This conclusion was reasonable in light of the evidence presented at trial.  Petitioner's directed verdict claim therefore fails.

### C. The trial court's failure to sever Petitioner's trial did not prejudice him

Petitioner argues that the trial court erred in failing to sever his trial from that of his co-defendant, Jarrell Frazier.  *Doc. 7*, Ex. 1 at 16.  As noted above, failure to sever can rise to the level of a constitutional matter if "there is a strong showing of prejudice caused by the joint trial." *Cummings*, 161 F.3d at 619.  Here, Petitioner contends that he was prejudiced by the admission of Mr. Frazier's statements via the testimony of his girlfriend, Shawntell Harrison, in violation of his Sixth Amendment right to confront witnesses against him.  *Doc. 7*, ex. 1 at 16.

In *Bruton v. United States*, the U.S. Supreme Court recognized that "a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial." *Richardson v. Marsh*, 481 U.S. 200, 207 (1987) (citing *Bruton v. United States*, 391 U.S. 123, 135-36 (1968)).  However, *Bruton* only applies to statements that expressly implicate the defendant.  *Id*. at 208.  Confessions of a co-defendant that do not expressly implicate the defendant are admissible if they are "(i) redacted to eliminate any reference to the non-confessing defendant, and (ii) accompanied by an appropriate limiting instruction that

17

the confession is to be considered only against the confessor." *Spears v. Mullin*, 343 F.3d

1215, 1231 (10th Cir. 2003) (quoting *Fowler v. Ward*, 200 F.3d 1302, 1307 (10th Cir. 2000)).

In this case, Shawntell Harrison's testimony was appropriately redacted.  Both

prior to and during the trial, Judge Brennan ordered the State to use leading questions

to prevent Ms. Harrison's testimony from implicating Petitioner. *M. Sever Tr*. at 22:10-

20; *Trial Tr*. (Feb. 12) at 10:5-11:23; *Doc. 11*, Ex. O at 9.  The State complied: during direct

examination, Ms. Harrison was questioned only as to her interactions with and

knowledge of Mr. Frazier and neither directly nor indirectly referenced Petitioner. *Trial

Tr*. (Feb. 12) at 12:9-34:10.  However, the trial court failed to provide a limiting

instruction immediately prior to, or following, Ms. Harrison's testimony. Although the

court later instructed the jury to "consider separately whether each of the defendants is

guilty or not guilty of . . . each of the [] charges," such an instruction cannot take the

place of an instruction immediately before or after the testimony. *Doc. 15*, Ex. 1 at 4;

*Spears*, 343 F.3d at 1231-32.  The lack of a limiting instruction therefore constituted a

violation of Petitioner's constitutional rights.

"When faced with a *Bruton* error, harmless-error analysis applies to decide

entitlement to relief.  Harmless error is assessed 'in the context of the entire case.'" *Id*. at

1232 (quoting *Lee v. Illinois*, 476 U.S. 530, 547 (1986)).  In § 2254 cases, "a court must

assess the prejudicial impact of constitutional error in a state-court criminal trial under

the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*, 507 U.S.

18

619 (1993)]." [6]  *Fry v. Pliler*, 551 U.S. 112, 121 (2007).  That standard asks whether the error "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637.  "[A] 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict."  *Welch v. Workman*, 639 F.3d 980, 992 (10th Cir. 2011) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).

Here, the *Bruton* error was harmless because Ms. Harrison's testimony did not have a substantial and injurious effect on the jury's verdict.  First, the testimony was not an important part of the prosecution's case against Petitioner.  Rather, Mr. Edwards' testimony and the fingerprints found on the truck tied Petitioner to the murder.  Second, Ms. Harrison's testimony did not significantly aid the prosecution.  During questioning, her answers regarding whether Mr. Frazier told her about the shooting were so apparently contradictory that the court questioned whether she had perjured herself.  *Trial Tr.* (Feb. 12, 2004) at 34:18-24.  Finally, as noted by the New Mexico Supreme Court on appeal, Petitioner did not object to Ms. Harrison's testimony so long as the prosecution abided by the restrictions imposed by the court.  *Id*. at 10:10-15.

---

[6] When considering whether a state trial court error was harmless, federal courts need not consider whether the state appellate court's harmlessness determination was contrary to or an unreasonable application of clearly established federal law under § 2254(d)(1).  *Lott v. Trammell*, 705 F.3d 1167, 1218 (10th Cir. 2013).  This is because § 2254(d)(1)'s deferential standard of review is subsumed by the *Brecht* test.  *Fry v. Pliler*, 551 U.S. 112, 120 (2007) ("[I]t certainly makes no sense to require formal application of both tests (AEDPA/*Chapman* and *Brecht*) when the latter obviously subsumes the former.").

Under this record, it was not unreasonable for the state court to conclude that the failure to give the limiting instruction was harmless.  As such, this Court should deny relief as to this claim.

**D.  Judge Brennan's alleged bias did not prejudice Petitioner**

Petitioner alleges that Judge Brennan was mentally unfit to preside over his trial due to his cocaine addiction and was biased against Petitioner due to his associations with drug dealers.  *Doc. 2* at 14-16.  "In general, the standard for evaluating whether a habeas petition alleges judicial bias amounting to a denial of due process is whether the judge was 'actually biased or prejudiced against the petitioner.'"  *Nichols v. Sullivan*, 867 F.2d 1250, 1254 (10th Cir. 1989) (quoting *Dyas v. Lockhart*, 705 F.2d 993, 996 (8th Cir. 1983)).  In some situations, the possibility or appearance of bias can "be so substantial as to create a conclusive presumption of actual bias."  *Id*.  "The test for assessing whether the likelihood of or appearance of bias is so great as to be constitutionally intolerable is whether 'the judge [is] unable to hold the balance between vindicating the interests of the court and the interests of the accused.'"  *Id*. (quoting *Taylor v. Hayes*, 418 U.S. 488, 501 (1974)).

Petitioner argues Judge Brennan's bias is evident in the fact that he "assigned himself to Petitioner's case administratively" and "handed down the sentence on Petitioner on 5-28-2004, but never signed nor filed the judgment and sentence. . . . [T]he state had Judge Richard J. Knowles sign off and file Petitioner's judgment and sentence

20

on 1-19-2005." *Doc. 2* at 16.   He also attaches newspaper clippings indicating that Judge

Brennan was arrested on May 29, 2004, for possession of a controlled substance and

tampering with evidence, as well as internet articles describing the effect of cocaine on

the brain.  *Doc. 11*, Ex. R, attach. nos. 11, 17.

None of these assertions or exhibits amount to evidence that Judge Brennan was

actually or even likely biased against Petitioner.  As the Supreme Court noted on

appeal, Petitioner's evidence is entirely speculative and circumstantial—it presumes

that because Judge Brennan was arrested for possession of cocaine, (1) he was using

cocaine during the pendency of Petitioner's case and sentencing, (2) he had ties to drug

dealers, and (3) that these two facts influenced his handling of Petitioner's case.

"Circumstances which merely lead one to speculate about the impartiality of the judge

do not deny a litigant due process unless the litigant is in fact treated unfairly." *Johnson

v. Werholtz*, 2008 WL 5397500, at *9 (D. Kan. Dec. 24, 2008) (citing *Nichols*, 867 F.2d at

1254).  Petitioner does not cite to—and I have not found in the trial transcript—conduct,

comments, or an adverse ruling by Judge Brennan that reflects bias.  *See doc. 2* at 14-16.

Petitioner's leaps of logic are not the sort of "compelling" evidence required to

demonstrate bias.  *See Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994); *cf. Withrow v.

Larkin*, 421 U.S. 35, 46 (1975) ("[T]he probability of actual bias . . . is too high to be

constitutionally tolerable . . . . [when] the adjudicator has a pecuniary interest in the

outcome [or] he has been the target of personal abuse or criticism from the party before him.").

Petitioner's argument that Judge Brennan was improperly assigned to this case is also without merit. Petitioner has no right to a particular procedure for the assignment of a judge so long as the judge assigned is not biased. *See United States v. Pearson*, 203 F.3d 1243, 1256 (10th Cir. 2000). As discussed above, Petitioner has failed to demonstrate the Judge Brennan was, in fact, biased. Likewise, he presents no evidence linking the delay between Petitioner's sentencing hearing and the issuance of a final judgment to bias. The more likely explanation is that the delay was due to Judge Brennan's arrest.

Finally, Petitioner suggests that Judge Brennan was not mentally fit to preside over his trial due to the effect of cocaine on his cognitive functioning. *Doc. 2* at 15. Again, Petitioner offers no examples of conduct, comments, or rulings that demonstrate mental impairment. Nor does he explain how he was prejudiced by the alleged impairment. *Cf. Deere v. Cullen*, 2013 WL 2379832, at *23-*26 (9th Cir. June 3, 2013) (finding § 2254 petitioner failed to put forth sufficient evidence of trial judge's alleged mental impairment to warrant evidentiary hearing when record did not indicate incompetency, trial attorneys never moved for recusal, and state supreme court affirmed ruling).

Given the utter lack of evidence of bias, the state courts' dismissal of the claims against Judge Brennan for "offer[ing] no evidence of actual bias, other than to speculate that due to Judge Brennan's use of cocaine, he had a personal bias in the case because the victim [] also used cocaine" was neither contrary to or an unreasonable application of the law. *Doc. 11*, Ex. O at 33. Therefore, this claim must fail.

### E.  Ineffective assistance of trial counsel

Petitioner argues that his trial counsel[7] was ineffective for a number of reasons. *Doc. 2* at 5-7; *Doc. 7* at 5-27. Under *Strickland v. Washington*, counsel is constitutionally ineffective if a petitioner can demonstrate both that (1) his "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defendant." 466 U.S. 668, 687-88 (1984). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 687). As to the first prong, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id*. at 788 (quoting *Strickland*, 466 U.S. at 690). "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions'

---

[7] At trial, Petitioner was represented by two attorneys—Darryl Bouchard and Dan Sheehan. For many of his claims, it is not clear which attorney Petitioner is alleging was ineffective. Therefore, when discussing Petitioner's ineffective assistance claims, I will refer generally to "trial counsel," encompassing both Mr. Bouchard and Mr. Sheehan, where Petitioner has failed to specify one or the other.

will be limited to any one technique or approach." *Id* at 789 (quoting *Strickland*, 466 at

689).  To satisfy the second prong, "[t]he defendant must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  A court may

address the two prongs of *Strickland* in any order and, if a petitioner fails to satisfy one

prong of the test, the court need not address the other. *Id*. at 697.

When reviewing a claim of ineffectiveness of counsel which has been denied by

the state court, the burden is even heavier—"[t]he standards created by *Strickland* and §

2254(d) are both highly deferential, and when the two apply in tandem, review is

doubly so." *Harrington*, 131 S. Ct. at 788 (internal citations and quotations omitted).

"When § 2254 applies, the question is not whether counsel's actions were reasonable[;

rather, t]he question is whether there is any reasonable argument that counsel satisfied

*Strickland's* deferential standard." *Id*.

### 1.  Failure to investigate prior to the trial

Petitioner argues that trial counsel failed to conduct an adequate pre-trial

investigation, including failing to procure, interview, and prepare expert and lay

witnesses and to inquire into the possible misidentification of the white pickup truck

found at the scene of the crime. *Doc. 2* at 5-6; *Doc. 7* at 5-25.  "[C]ounsel has a duty to

make reasonable investigations or to make a reasonable decision that makes particular

investigations unnecessary." *Strickland*, 466 U.S. at 691. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id*. "Counsel [i]s entitled to formulate a strategy that [i]s reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington*, 131 S. Ct. at 789. I discuss each alleged failure to investigate in turn.

### a. *Failure to retain a defense fingerprint expert*

At trial, the State put on a fingerprint expert, Detective Josephine Denise Herrera, to compare the fingerprints on the white pickup truck found at the crime scene with a fingerprint card taken upon Petitioner's prior arrest in 1996. *Trial Tr*. (Feb. 12) at 42. She testified that the prints matched. *Id*. at 60:2-5. Petitioner argues that trial counsel was ineffective for failing obtain a fingerprint expert to rebut Detective Herrera's testimony because the presence of Petitioner's fingerprints at the crime scene was one of the State's key pieces of evidence. *Doc. 2* at 5; *Doc. 7* at 9.

Mr. Bouchard's decision not to hire a fingerprint expert was clearly a strategic one—he decided to attack the admissibility of the 1996 fingerprint card by arguing that the State could not lay a sufficient foundation. *Trial Tr*. (Feb. 9) at 23:2-27:12; *Trial Tr*. (Feb. 12) at 37:4-39:16. He therefore chose to save time, money, and resources by refraining from hiring an expert he thought was unnecessary. *See doc. 7* at 9. "[A]n attorney may not be faulted for a reasonable miscalculation or lack of foresight."

*Harrington*, 131 S. Ct. at 791.  While Mr. Bouchard's effort to prevent the admission of the card ultimately failed, his approach "was well within the range of professionally reasonable judgments."  *Strickland*, 466 U.S. at 699; *Harrington*, 131 S. Ct. at 791 ("[]*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense.").  Moreover, when it appeared the card would be admitted, Mr. Bouchard twice requested a continuance so that he could procure a fingerprint expert.  *Id*. at 29:2-15; *Trial Tr*. (Feb. 12) at 39:13-16.  When, as here, "counsel's overall performance indicates active and capable advocacy," "it is difficult to establish ineffective assistance."  *Harrington*, 131 S. Ct. at 791.

Petitioner has also failed to demonstrate prejudice arising from the lack of a defense fingerprint expert.  His prognostication that an expert might have cast doubt on the State's fingerprint evidence is insufficient to demonstrate a reasonable probability that, had trial counsel retained an expert, the outcome of the trial would have been different.  *See Pierce v. Romero*, 2007 WL 5542138, at *8 (D.N.M. Nov. 20, 2007) (finding petitioner who claimed ineffective assistance for counsel's failure to retain an expert witness was unable to show prejudice because "he failed to identify an expert capable of testifying favorably on his behalf that would alter the outcome").  This is particularly true here since there was also eyewitness testimony placing Petitioner at the scene of the crime.

26

For all of these reasons, the state courts' finding that Mr. Bouchard was not ineffective for failing to hire a fingerprint expert is neither contrary to nor an unreasonable application of the law.

### b. Failure to investigate the white pickup truck

Petitioner alleges that trial counsel failed to interview witnesses who could have testified that he drove a white Ford Ranger pickup truck identical to the white Mazda pickup truck used in the crime and was seen in that truck earlier on the day of the murder. *Doc. 2* at 5; *Doc. 7* at 17, 23-25. "[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney." *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008). As Respondent notes, trial counsel may well have had good reasons for deciding not to interview and call these witnesses. He may have feared that the witnesses would not have come across well on cross examination or that their testimony could harm rather than help Petitioner. *See id.* ("For as easily as one can speculate about favorable testimony, one can also speculate about unfavorable testimony."). He may also have been concerned that focusing the jury's attention on the white pickup truck could backfire because it would increase the likelihood that the prosecution would produce further evidence connecting Petitioner to the Mazda. *Cf. Harrington*, 131 S. Ct. at 790 (noting that it was reasonable for trial counsel to avoid testing blood evidence when there "was a serious risk that expert evidence could destroy [petitioner's] case"). And he may have thought that the testimony of the

27

witnesses cited by Petitioner—Linda Chavez, Frank Santillanes, and Rosie Coy—would not be useful.  Indeed, the police canvass questionnaires for all three indicate only that earlier in the day they "saw a white small white [sic] pickup at Gerald and University blocking a PT Cruiser from going westbound." *Doc. 11*, Ex. R, attach. nos. 2-4.  None of the three identified Petitioner as the driver or a passenger in the pickup and none witnessed the beating of Mr. Knoll or were present at the crime scenes at any time.  *Id*.  Given this generic testimony, it is also not clear how Petitioner was prejudiced by trial counsel's failure to interview or call these witnesses.  As the Supreme Court has recognized, "[t]o support a defense argument that the prosecution has not proved its case it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates." *Harrington*, 131 S. Ct. at 790.  That trial counsel took this tact rather than pursuing a potential white pickup truck defense does not render him constitutionally deficient.  The state courts' dismissal of this claim was reasonable.

### c.  Failure to interview or call Jeanean Newborn

Petitioner alleges that trial counsel was ineffective for failing to interview and call as a witness Jeanean Newborn, who was in a relationship with Petitioner at the time of his arrest.  *Doc. 2* at 6; *Doc. 7* at 17; *Doc. 11*, Ex. R, attach no. 21.  Prior to dating Petitioner, Ms. Newborn was in a relationship with Mr. Edwards, who is the father of her children.  *Id*.  Petitioner suggests that Mr. Edwards bore a grudge against Petitioner due to his relationship with Ms. Newborn and that grudge may have affected his

testimony.  *Id.*; *Doc. 7* at 16-17.  For her part, Ms. Newborn in an affidavit attached to Petitioner's state court habeas petition said that Mr. Edwards told her "he was going to do or say whatever the prosecutor asked of him to convict Davis Wilson [to] avoid a probation violation."  *Doc. 11*, Ex. S, attach. 21.

Again, "the decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney."  *Boyle*, 544 F.3d at 1139.  Trial counsel may have felt that Ms. Newborn was not credible, that her testimony could reflect poorly on Petitioner, or that it might highlight Mr. Edwards' testimony, from which Petitioner wanted to distance himself.  But equally important, Petitioner has not demonstrated that he was prejudiced by trial counsel's failure to call Ms. Newborn.  Beyond Petitioner's uncorroborated allegations, there is no evidence that Mr. Edwards was coached by the prosecution.  In fact, even on direct examination, Mr. Edwards admitted that he had difficulty remembering the night in question and that he "wasn't too sure" he could identify Petitioner as having been at the crime scene.  *Trial Tr.* (Feb. 10) at 88:22-89:2, 94:21-23, 106:13-107:24.  Moreover, defense counsel effectively cast doubt on Mr. Edwards' identification of Petitioner.  He confirmed that Mr. Edwards was extremely drunk at the time of the events in question and that he had seen Petitioner and Mr. Frazier in a white truck earlier in the day.  *Trial Tr.* (Feb. 10) at 111:3-112:17, 114:17-116:11.  Mr. Bouchard even got Mr. Edwards to admit he was not sure that the men he saw were Petitioner and Mr. Frazier:

> Q:   Okay.  Anthony, you're not really certain that the guys you
> saw by that truck were Jarrell and Davis, are you?
>
> A:   No, sir.
>
>      \*\*\*
>
> Q:   Your identification of them as—these two gentlemen, sitting
> here, as being the two guys that were there that night, that
> was based on your assumption it was them, because you
> had seen them in that truck earlier, right?
>
> A:   Yes, sir.
>
> Q:   In fact, what you said when we asked you about how sure
> you were of that identification, you said you're only about as
> sure it was Jarrell and Davis as a drunk person could be,
> looking at them in really poor lighting conditions that night.
> Is that right?
>
> A:   Yes, sir.
>
> Q:   You didn't recognize their voices, did you?
>
> A:   Shit, not really, because I really wasn't paying attention.
>
>      \*\*\*
>
> Q:   Bottom line, you're not sure it was Jarrell and Davis that was
> there that night, are you?
>
> A:   Shit.  No, not really, sir.

*Id*. at 124:16-126:4.  Given that Mr. Bouchard effectively undermined Mr. Edwards'

testimony on cross examination, there is not a reasonable probability that Ms.

Newborn's testimony would have altered the jury's verdict.  The state courts' dismissal

of this claim was therefore neither contrary to nor an unreasonable application of the

law.

> ### d. *Failure to consult DNA experts and independently test hair, blood, and palm prints*

Petitioner argues that trial counsel was ineffective for failing to independently

test, and consult DNA experts regarding, the blood and hair samples and palm prints

found at the locations of the beating and shooting.  *Doc. 2* at 5; *Doc. 7* at 22-23.  It was

reasonable for the state courts to conclude that trial counsel made a strategic decision to challenge the blood, hair, and palm print evidence through cross examination rather than independent testing and expert testimony.  To begin with, even if testing proved that the hair, blood, and palm prints belonged to someone else, they would not prove that Petitioner was not also present at the scene of the crime.  *See LaFevers*, 182 F.3d at 722 (finding counsel not ineffective for failing to test DNA when even favorable DNA test results would not have exculpated petitioner).  Moreover, while testing may have helped Petitioner, it could also have harmed him if it the results showed that the hair, blood, and/or palm prints belonged to him.  *See Harrington*, 131 S. Ct. at 789-90 (noting that choice not to test blood was strategic when analysis of blood could potentially harm petitioner's defense).

Petitioner has also failed to demonstrate any prejudice arising from the lack of testing and expert testimony.  As noted above, even if the tests matched the blood, hair, and palm prints to someone else, those results do not undermine any of the evidence supporting the jury verdict—the jury could still have found that Mr. Edwards' testimony and Petitioner's fingerprints on the pickup truck linked him to the crime.  In addition, Mr. Bouchard and Mr. Sheehan cast doubt on the forensic evidence on cross-examination.  They elicited the fact that the hair was "straight brown-black hair," which did not match Petitioner's hair, that there was no way to know when the palm prints had been placed on the truck, and that the blood samples taken from the truck had not

31

been tested.  *Trial Tr.* (Feb. 10) at 58:14-18; *Trial Tr.* (Feb. 11) at 73:22-25, 109:15-110:3.

Petitioner has not demonstrated that testing would have been any more effective at

undermining the forensic evidence.  The state courts' dismissal of this claim was

therefore neither contrary to nor an unreasonable application of the law.

### e.  Failure to interview State witnesses before trial

Petitioner alleges that Mr. Bouchard failed to "show up to the scheduled witness

interview concerning the fingerprint evidence with Detective Herrera" and "neglected

to come to Mr. Johnson's interview."  *Doc. 7* at 9.  As for Detective Herrera, Mr.

Bouchard declined to interview her because, as discussed above, he intended to attack

her testimony by preventing the admission of the 1996 fingerprint card.  *Trial Tr.* (Feb.

9) at 23:15-24:15.  Since the State was using Detective Herrera solely to compare the

fingerprints on the truck to those on the 1996 card, Mr. Bouchard could reasonably have

decided that the interview was unnecessary.  Although in retrospect this may have been

a poor decision, it was not below the level of prevailing professional norms.  *See Premo*

*v. Moore*, 131 S. Ct. 733, 745 (2011) ("[H]indsight cannot suffice for relief when counsel's

choices were reasonable and legitimate based on predictions of how the trial would

proceed.").  Moreover, Petitioner has not demonstrated how interviewing Detective

Herrera prior to the trial would have altered the verdict.  By interviewing her in

advance of trial, Mr. Bouchard would only have confirmed what he already knew—that

she matched the prints found on the pickup truck to those of Petitioner on the 1996

fingerprint card.  *See Trial Tr.* (Feb. 9) at 23:2-20.  Petitioner has not shown that Mr.

Bouchard would have uncovered any additional evidence or information that would

have assisted him at trial.

As for Detective Keith Johnson, Petitioner contends that Detective Johnson had

the 1996 fingerprint card with him at the interview and that if Mr. Bouchard had

attended the interview, he could have asked to see the card.  *Doc. 7* at 9, 11.  First,

although it is true that Mr. Bouchard did not attend the interview, he sent his

investigator in his stead.  *Doc. 7* at 9.   Second, there is no reason to believe that either

Mr. Bouchard or the investigator was, or should have been, aware Detective Johnson

had a copy of the card with him at the interview since Detective Johnson is a blood

splatter expert, not a fingerprint analyst.  *See Trial Tr.* (Feb. 11) at 79:12-18.  Third, at the

time of the interview with Detective Johnson, Mr. Bouchard was still under the

impression that the card would not be admissible and therefore had no reason to ask to

see it.  Finally, even if Mr. Bouchard had obtained a copy of the card from Detective

Johnson, as discussed above, his decision not to hire an expert to examine it was

reasonable.  *See* Section V.E.1.a, *supra*.  Therefore, Petitioner suffered no prejudice from

his failure to obtain the card at the interview.  For these reasons, the state courts'

dismissal of this claim was reasonable.

### 2.  Inadequate pretrial performance

#### a.  Failure to file pretrial motions

Petitioner argues in passing that trial counsel was ineffective for failing to

"pursue numerous opportunities to submit potentially meritorious pre-trial motions."

*Doc. 7* at 7.  In his original state court habeas petition, Petitioner claims that trial counsel

should have filed a motion in limine "to exclude any evidence the State sought to

identify at trial with 'blood' on it as the State never produced any reports with positive

forensic scientific results that the substance was indeed 'blood,' 'human blood' or 'the

victim[']s blood.'"  *Doc. 11*, Ex. R at 19.  Trial counsel's decision not to file such a motion

was reasonable because such a motion would likely have failed.  Under the New

Mexico Rules of Evidence, evidence is admissible if the proponent can demonstrate that

"the item is what the proponent claims it is."  N.M. R. Evid. 11-901(A); Fed. R. Evid.

901(a).  Here, the State claimed only that the blood evidence was blood; it never made

definitive claims about the source of the blood.  As Respondent notes, experienced lay

witnesses can testify that a substance is blood.  *See* Fed. R. Evid. 701, advisory

committee note ("[A] lay witness with experience could testify that a substance

appeared to be blood" because this is the sort of testimony that "results from a process

of reasoning familiar in everyday life.").  The law enforcement officers who testified

regarding the crime scene would all have had significant familiarity with blood.  In

particular, Detective Johnson testified as a blood spatter expert and therefore was

qualified to identify blood.  *See Trial Tr.* (Feb. 11) at 79:12-18.

Furthermore, it is not clear how Petitioner was prejudiced by the admission of

the blood evidence.  The State did not attempt to tie the blood to Petitioner.  Rather, it

presented circumstantial evidence that indicated that much of the blood likely belonged

to Mr. Knoll.  Petitioner never disputed the circumstances of the crime, only that he was

not the perpetrator.  Because evidence of Mr. Knoll's blood at the crime scenes goes to

the nature of the murder, not the identity of the perpetrator, Petitioner was not

prejudiced by its admission.  The state courts' dismissal of this claim was therefore

neither contrary to nor an unreasonable application of the law.

### b.  Failure to object to the trial court's jurisdiction

Petitioner argues that trial counsel was ineffective for failing to object to the trial

court's jurisdiction over his preliminary hearing.[8]  *Doc. 2* at 6; *see also doc. 11*, Ex. R at

18-19.  He claims that "[t]he State failed to establish sufficient evidence to convince a

reasonable person that the alleged crimes were committed in Bernalillo County or the

State of New Mexico."  *Doc. 2* at 6.  The state courts' dismissal of this claim was entirely

reasonable because such a jurisdictional objection would have failed.  New Mexico's

district courts are courts of general jurisdiction, "not limited by the Constitution to any

---

[8] To the extent that Petitioner is arguing that the district court in fact lacked jurisdiction or that it violated
the  law by failing to make a jurisdictional finding at the preliminary hearing, that is a matter of state law
not cognizable before this Court.  *Bahadori v. Milyard*, 2010 WL 3002028, at *3 (D. Colo. July 29, 2010)
(citing *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994)).

particular territory" of New Mexico, *Peisker v. Chavez*, 46 N.M. 159, 123 P.2d 726, 729 (1942), and under New Mexico law, district courts have the authority to conduct preliminary hearings, *State v. White*, 232 P.3d 450, 454 (N.M. Ct. App. 2010).  Multiple witnesses testified that the crime took place in the Kirtland Addition neighborhood of Albuquerque, *Prelim. Hrg. Tr.* at 36:19-24, 109:1, 114:15-115:14, and the jury instructions required the jury to find that each crime was committed in New Mexico before finding Petitioner or Mr. Frazier guilty of that crime.  *Doc. 15*, Ex. 1 at 5-8, 10-12, 14-19.  Given the complete lack of any dispute over the location of the crime, trial counsel was not deficient for failing to question the district court's jurisdiction over the preliminary hearing.

### 3.   Failure to perform effectively at trial

#### a.   *Failure to make a* **Batson** *challenge*

Petitioner argues that trial counsel was ineffective for failing to challenge the absence of black jurors on the jury at his trial under *Batson v. Kentucky*, 476 U.S. 79 (1986).  *Doc. 2* at 6; *Doc. 7* at 13.  *Batson* prohibits the prosecution from using its peremptory challenges to strike potential jurors who are members of the defendant's race.  476 U.S. at 96.  "By itself, the racial composition of a jury does not present a cognizable constitutional claim."  *Battle v. Workman*, 353 F. App'x 105, 109 (10th Cir. 2009).

The record does not reflect the racial composition of the jury pool.  Petitioner says that he remembers "that one African American was dismissed from the jury prior to the jury selection process." *Doc. 11*, Ex. L at 21.  This allegation, even if true, does not support a *Batson* violation because the dismissal was not the product of a prosecutorial peremptory strike.  Because there is no evidence of racially discriminatory peremptory strikes, trial counsel's decision not to make a *Batson* challenge was not deficient.  The state court dismissal of this claim was therefore reasonable.

### b.  Failure to cross-examine Detective Herrera

Petitioner alleges that trial counsel was ineffective because he did not cross-examine Detective Herrera, the State's fingerprint expert.  *Doc. 2* at 7.  "[C]ounsel's decisions regarding how best to cross-examine witnesses presumptively arise from sound trial strategy."  *Richie v. Mullin*, 417 F.3d 1117, 1124 (10th Cir. 2005).  Contrary to Petitioner's implication, trial counsel did not allow Detective Herrera's testimony to go unchallenged.  Although he did not cross-examine Detective Herrera, Mr. Bouchard engaged in *voir dire* of her to establish that she did not personally take Petitioner's fingerprints in 1996 and was relying solely on the fingerprint card itself to identify the prints as Petitioner's.  *Trial Tr*. (Feb. 12) at 57:18-58:5.  He used this testimony to object, albeit unsuccessfully, to the admission of the card on the basis of lack of foundation.  *Id*. at 58:7-10.  Mr. Baiamonte, Mr. Frazier's counsel, then cross-examined Detective Herrera, eliciting the fact that she did not analyze shell casings found at the scene for

fingerprints and that there is no way to date fingerprints. *Id*. at 70:6-73:13. It was

reasonable for trial counsel to rely on Mr. Baiamonte's cross examination of Detective

Herrera—his questions elicited important information and Petitioner does not suggest

that there are specific additional questions that trial counsel should have asked but

failed to. *See Richie*, 417 F.3d at 1124 ("Experience teaches that rarely can performance

be measured by the length of cross-examination alone."). Trial counsel's decision not to

further cross-examine Detective Herrera may also have been strategic. Further

questioning her about Petitioner's fingerprints might have served only to highlight the

importance of the fingerprints to the jury. Since the fingerprints were a key piece of the

State's evidence, trial counsel may well have wanted to de-emphasize them. Finally,

Petitioner has not shown that additional cross-examination would have elicited

information likely to alter the jury verdict. The state courts' dismissal of this claim was

therefore neither contrary to nor an unreasonable application of *Strickland*.

### c. Failure to impeach state witnesses

Petitioner alleges that trial counsel failed to "properly impeach prosecution[']s

witnesses with material information." *Doc. 7* at 7. In his state court habeas petition,

Petitioner provides more specifics: he claims that trial counsel should have questioned

(1) Mr. Edwards as to his prior relationship with Ms. Newborn, Petitioner's girlfriend;

(2) Officer Vigil as to his prior interaction with Mr. Knoll regarding an earlier

carjacking; and (3) Detective Flores as to his assertion that the police could not find Petitioner in the Kirtland Addition during their investigation. *Doc. 11*, Ex. R at 20-21.

It is not clear what evidence Petitioner would have had trial counsel use to impeach these three witnesses. If Petitioner is more accurately asserting that trial counsel should have cross-examined these three witnesses about these three particular topics, he fails to demonstrate that trial counsel's decisions to forgo questioning were both unreasonable and prejudicial. As to Mr. Edwards, trial counsel may have feared that delving into the interwoven personal relationships between Petitioner, Mr. Edwards, and Ms. Newborn would have confused and distracted the jury and was not necessary given Mr. Edwards' testimony on cross-examination. *See* Section V.E.1.c, *supra*. Likewise, it is not clear how further questioning Officer Vigil and Detective Flores about Mr. Knoll's earlier carjacking or the police's difficulty locating Petitioner would have benefitted Petitioner. Trial counsel may well have thought that these lines of questioning would unnecessarily confuse the jury or elicit facts potentially harmful to Petitioner. Furthermore, Petitioner has not demonstrated that if trial counsel had pursued these topics, the jury would have come to a different verdict. Officer Vigil's and Detective Flores' testimony would not have affected the evidence the jury relied on to tie Petitioner to the crime. And even if presented with Mr. Edwards' alleged motive of revenge, the jury could still have credited his testimony. Because Petitioner has

failed to demonstrate that trial counsel was ineffective, the state courts' dismissal of this claim was reasonable.

### d.   Failure to object to the admission of crime scene photos

Petitioner argues that counsel was ineffective for failing to object to the admission of crime scene photographs.[9]  *Doc. 7* at 9-11.  He alleges that the photos were prejudicial because the State suggested that they depicted the victim's blood even though the blood was never DNA tested.  *Id*. at 11.  Unlike in his appeal, Petitioner does not object to photos of the victim's body or face, but rather only to photos of the crime scene.  *Compare doc. 7* at 19-21 (referencing the "plethora of photos that the State alleged were from crime scenes" and which "were admitted into evidence to depict blood evidence to substantiate the State's case") *with doc. 11*, Ex. L at 35 (objecting to "death mask" photo of victim).  Trial counsel's failure to object to such photos was not unreasonable.  Photos of blood at the crime scene are not particularly gruesome or likely to arouse heated, emotional reactions.  *Cf. Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999) (finding photos of charred corpse not unduly prejudicial because they

---

[9] To the extent that Petitioner is alleging that the photos were improperly admitted, rather than that his counsel was ineffective in failing to object to them, the admission is reviewed under the Due Process Clause.  *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999).  This Court must ask "whether the admission of the photographs rendered the proceedings fundamentally unfair."  *Id*. at 1275.  The Tenth Circuit has cautioned that courts must "approach the fundamental fairness analysis with 'considerable self-restraint.'"  *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998) (quoting *United States v. Rivera*, 900 F.2d 1462, 1477 (10th Cir. 1990)).  For the same reasons, discussed *infra*, that trial counsel's failure to object to the photos was not prejudicial, the admission of the photos did not render Petitioner's trial fundamentally unfair.

were probative and reflected the gruesome nature of the crime).  Because they were

likely to be admitted over an objection, failing to object was not ineffective.

While the State may well have hoped that the jury would infer that the blood in

the photos belonged to Mr. Knoll, Petitioner does not explain why this inference is

prejudicial.  The nature of the crime—which Petitioner does not dispute—was such that

one would expect to find the victim's blood at the crime scene.  The prejudicial

inference would have been that the blood belonged to Petitioner, thereby placing him at

the scene of the crime.  Petitioner does not allege, and the trial transcript does not

indicate, that the State ever made that claim.  For these reasons, the state courts'

dismissal of this claim was reasonable under *Strickland*.

### e.   Failure to preserve Confrontation Clause rights

Petitioner argues that trial counsel "failed to properly preserve Petitioner's

Confrontation Clause rights at trial, specifically concerning State[']s exhibit 122 [the

1996 fingerprint card]."[10]  *Doc. 2* at 7.  The Confrontation Clause prohibits the admission

of out-of-court testimonial statements unless the declarant is unavailable and the

defendant has had a prior opportunity to cross-examine the declarant.  *Crawford v.

Washington*, 541 U.S. 36, 59 (2004).  Testimonial statements are those whose "primary

---

[10] The New Mexico Supreme Court declined to address this claim on appeal because Petitioner "failed to properly preserve the issue in the trial court, and relegated any discussion of fundamental error to a footnote in his brief in chief."  *Doc. 11*, ex. O at 23.  However, because Petitioner raised the issue in his habeas and writ petitions and because the district court and Supreme Court dismissed those petitions summarily, this Court must presume that those courts considered the issue on the merits for purposes of § 2254 review.  *Harrington*, 131 S. Ct. at 785.

purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006).  The test is objective: would "a reasonable person in the position of the declarant [] objectively foresee that his statement might be used in the investigation or prosecution of a crime?"  *United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir. 2005).

The 1996 fingerprint card was not testimonial.  The fingerprints were taken and certified as part of routine police procedure during an arrest that occurred years prior, and was totally unconnected, to Mr. Knoll's murder. *See Pann v. Warren*, (E.D. Mich. Sept. 29, 2011) ("Public records which exist prior to, and apart from, a criminal prosecution are akin to business records because they are not prepared for the purpose of criminal prosecution.  Under *Crawford*, such public records are not themselves testimonial and their admission is not precluded by the Confrontation Clause."); *United States v. Weiland*, 420 F.3d 1062, 1077 (9th Cir. 2005) (finding fingerprint card in a "penitentiary packet" non-testimonial because the prints were taken as part of "a routine certification by the custodian of a domestic public record"). A reasonable person would not have foreseen the use of the fingerprint card in a trial eight years later on a completely unrelated offense.  *Cf. Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-11 (2009) (finding that "certificates of analysis" identifying evidence as cocaine are testimonial because they are sworn statements made solely for use at a trial on the same offense); *Pitts v. Warden, La. State Penitentiary*, 2012 WL 6554930, at *13 (W.D. La. Oct. 30,

42

2012) (finding certification of fingerprints on prior bill of information for different offense not testimonial).  Because the fingerprint card was non-testimonial, trial counsel's failure to object to it under the Confrontation Clause was not prejudicial.[11]

Moreover, trial counsel's performance at trial was not deficient.  Mr. Bouchard objected to the fingerprint card on other, but related, grounds—hearsay and lack of foundation.  *Trial Tr.* (Feb. 12) at 39:7-12.  Although overruled at trial, those objections were ultimately vindicated when the New Mexico Supreme Court on appeal found that the card "should not have been admitted into evidence because a proper foundation had not been laid to qualify it under . . . the business records exception to the hearsay rule."[12]  *Doc. 11*, Ex. O at 18.  The state courts' dismissal of this claim was therefore neither contrary to nor an unreasonable application of *Strickland*.

### f.  *Failure to allow Petitioner to testify*

Petitioner alleges that trial counsel refused to let him testify on his own behalf at trial, although he provides no details about the circumstances of his request beyond the bare fact that it was made.  *Doc. 7* at 7.  "A criminal defendant has a constitutional right to testify in his own behalf at trial.  The decision whether to testify lies squarely with the defendant; it is not counsel's decision."  *Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir.

---

[11] Unlike the first prong of *Strickland*, the prejudice prong is considered in light of current law rather than the law at the time of the original trial.  *Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993).  Thus, the Court must assess prejudice in light of *Crawford*, *Davis*, *Melendez-Diaz*, and other post-2004 cases.

[12] The Supreme Court went on to find that the error was harmless because "the jury could have found Wilson guilty even without the 1996 fingerprint card in evidence."  *Doc. 11*, ex. O at 22.

2004) (citations omitted).  "[C]ounsel lacks authority to prevent a defendant from testifying in his own defense, even when doing so is suicidal trial strategy."  *Id.*

Because Petitioner did not raise this claim until his habeas and writ petitions and because those petitions were summarily dismissed, it is not clear whether the state court decision was based on a factual determination that Petitioner did not ask to testify during his trial or a legal determination under *Strickland*.  *See* 28 U.S.C. § 2254(d).  In the first scenario, the state court determined that Petitioner did not inform trial counsel of his desire to testify on his own behalf, or possibly that Petitioner initially asked to testify but later changed his mind.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This is true even when, as here, the state court's decision lacks any explanation or analysis.  *Harrington*, 131 S. Ct. at 784.  Assuming that the state court determined Petitioner did not request to testify, Petitioner has put forth no evidence suggesting that determination was unreasonable.  Petitioner's conclusory allegation falls far short of the "clear and convincing evidence" necessary to overcome the presumption that the state court's factual findings are correct.  *See Bryson v. Ward*, 187 F.3d 1193, 1204 (10th Cir. 1999).  Nor may this Court hold an evidentiary hearing on this issue to determine for itself whether Petitioner instructed counsel to file an appeal.  *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (limiting the Court's review of claims under §2254(d)(1) to the

record before the state court); *Black v. Workman*, 682 F.3d 880, 895 (10th Cir. 2012) (extending the *Cullen* bar to § 2254(d)(2)claims).  The record contains no evidence to support the claim that Petitioner requested, and was denied, the right to testify. Therefore, the Court must defer to the state court's determination that Petitioner did not ask to testify and that his counsel was therefore not ineffective under *Strickland*.

In the second scenario, the state court found that even if Petitioner asked to testify, trial counsel was not ineffective under *Strickland*.  Preventing a criminal defendant from testifying on his own behalf is objectively unreasonable under the first prong of *Strickland*.  *Cannon*, 383 F.3d at 1171.  However, the state court may have found that Petitioner failed to demonstrate prejudice—that is, a reasonable probability that, but for counsel's preventing him from testifying, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694.  In his original habeas petition, Petitioner states that he would have testified to (1) the fact "that Kevin Fuller of the APD had repeatedly tried to set him up"; (2) his alibi; (3) the "motives of State and State witnesses"; and (4) the "past history of APD false arrests."  *Doc. 11*, Ex. R at 28.

To begin with, Petitioner does not describe his alibi and the court cannot rely on such a conclusory assertion.  *See Snyder v. Addison*, 89 F. App'x 675, 681 (10th Cir. 2004). As to the motives of the State and State witnesses, I presume Petitioner is referring to Mr. Edwards' alleged revenge motive.  As discussed above, there is no evidence that knowledge of Mr. Edwards' prior relationship with Ms. Newborn would have altered

the jury verdict.  *See* Section V.E.1.c, *supra*.  The remaining proposed testimony alleges

that Officer Kevin Fuller filed three felony cases against Petitioner, all of which were

dismissed and that "the APD had been warned by the dismissing court for harassing

Petitioner."  *Doc. 11*, Ex. R at 28.  Petitioner provides no evidence to support these

allegations and has not explained how these prior arrests would undermine the

evidence against him in this case.  Moreover, Petitioner admits that "APD Officer Kevin

Fuller took no part in the official investigation of this murder case."  *Id*.  Thus, I cannot

find that the state court was unreasonable in determining that Petitioner failed to

demonstrate prejudice arising from his inability to testify under *Strickland*.[13]

### g.  Failure to make objections at trial

Petitioner argues that trial counsel was ineffective for failing to "make proper

and/or timely material objections."  *Doc. 7* at 7.  Petitioner has not explained which

objections Mr. Bouchard should have made, let alone why making them would have

likely resulted in a different verdict.[14]  Such a conclusory assertion is insufficient to

---

[13] Respondent argues that Petitioner waived his right to testify by failing to alert the trial court to his desire to testify or his disagreement with counsel regarding whether he should testify.  *United States v. Williams*, 139 F. App'x 974, 976 (10th Cir. 2005) (quoting *United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000) ("When a defendant does not alert the trial court of a disagreement [with his counsel regarding his right to testify], waiver of the right to testify may be inferred from the defendant's conduct.").  While Petitioner's failure to raise the issue may well constitute waiver of any due process claim alleging violation of his right to testify, it does not prevent counsel from being found ineffective for denying his requests to testify.  *See id*. at 975-77 (distinguishing between due process claim and ineffective assistance of counsel claim regarding right to testify).

[14] In his original habeas petition, Petitioner argues that Mr. Bouchard should have objected under *Batson* to the lack of Blacks on the jury and to Judge Brennan for being "high on cocaine" during the trial.  *Doc. 11*, ex. R at 22-23.  I have addressed Petitioner's ineffective assistance claim under *Batson* in Section V.E.3.a, *supra*.  As for Judge Brennan, Petitioner's ineffective assistance claim fails for the same reasons as

support an ineffective assistance of counsel claim and the state court was therefore reasonable in denying this claim.  *See Snyder*, 89 F. App'x at 681.

### h.  Cumulative errors

Petitioner's final ineffective assistance argument regarding trial counsel is that counsel's multiple errors when taken together demonstrate that he "failed to subject the prosecution's case to meaningful adversarial testing."  *Doc. 2* at 7; *Doc. 7* at 27.  "A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."  *Cargle v. Mullin*, 317 F.3d 1196, 1206 (10th Cir. 2003) (quoting *United States v. Tole*, 297 F.3d 959, 972 (10th Cir. 2002)).  A petitioner is entitled to relief under the cumulative error doctrine "only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness."  *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013) (quoting *Matthews v. Workman*, 577 F.3d 1175, 1195 n.10 (10th Cir. 2009)).

"[C]umulative-error analysis applies where there are two or more actual errors. It does not apply . . . to the cumulative effect of non-errors."  *Hooks v. Workman*, 689 F.3d 1148, 1194-95 (10th Cir. 2012) (quoting *Moore v. Gibson*, 195 F.3d 1152, 1175 (10th Cir. 1999)).

---

his judicial bias claim, discussed above in Section V.D.  Counsel's failure to object was not unreasonable because counsel had no evidence that Judge Brennan was using cocaine during the trial—the articles submitted by Petitioner indicate that Judge Brennan's drug use did not come to light until after the trial. *See doc. 11*, ex. R, attach. nos. 11, 14.  Moreover, Petitioner has failed to demonstrate that the alleged cocaine abuse affected Judge Brennan's  ability to preside over the trial.

I have found that the state courts' dismissal of Petitioner's ineffective assistance claims was reasonable because trial counsel performed properly and effectively both before and during the trial.  The only potential error that I have identified arises from Petitioner's claim that trial counsel prevented him from testifying.  If the state courts decided that claim based on *Strickland's* prejudice prong, there is the possibility that trial counsel was in fact deficient for failing to allow Petitioner to testify despite his request.  That single error cannot support a cumulative error claim.  The state courts' dismissal of the cumulative error claim was therefore reasonable.

### F.  Ineffective assistance of appellate counsel

Petitioner's final claim alleges ineffective assistance of his appellate counsel, Jonas Ranes.  The same two-part *Strickland* analysis applies to each alleged error by Mr. Ranes.  *See* Section V.E, *supra*.

#### 1.  *Failure to perfect the appeal*

Petitioner first argues that Mr. Ranes was ineffective for failing to timely perfect his appeal.  *Doc. 2* at 10.  Mr. Ranes filed a Statement of Issues in the New Mexico Supreme Court on April 3, 2006.  *Doc. 11*, Ex. E.  On January 15, 2008, however, the court dismissed the case for failure to perfect the appeal because Petitioner had not filed anything since an entry of appearance on August 16, 2006.  *Id*., Ex. G.  On September 17, 2008, Mr. Ranes filed a motion to reinstate the appeal, explaining that he had been temporarily disabled by a medical condition.  *Id*., Ex. I.  The court granted the motion

on September 30, 2008, and Mr. Ranes filed an amended Statement of Issues on January 12, 2009. *Id.*, Exs. J, K. The appeal was fully briefed on June 26, 2009, and the court issued its decision on December 14, 2009. *Id.*, Exs. N, O.

"[A] lawyer who disregards specific instructions to perfect a criminal appeal acts in a manner that is both professionally unreasonable and presumptively prejudicial." *United States v. Snitz*, 342 F.3d 1154, 1155-56 (10th Cir. 2003) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). This is true even if counsel believed that the appeal was without merit. *United States v. Guerrero*, 488 F.3d 1313, 1315 (10th Cir. 2007). Therefore, if a defendant "actually asked counsel to perfect an appeal, and counsel ignored the request," counsel was per se ineffective and "[the defendant] will be entitled to a delayed appeal." *United States v. Garrett*, 402 F.3d 1262, 1267 (10th Cir. 2005).

Mr. Ranes' failure to timely file the appeal arguably constituted deficient performance. However, Petitioner experienced no resulting prejudice. The Supreme Court reinstated the appeal and issued a lengthy decision on the merits. *See doc. 11*, Ex. O. There is no evidence that the untimeliness of the appeal in any way affected the court's decision. In fact, Petitioner's appeal was partially successful—the court vacated his kidnapping conviction. *Id.* Because Petitioner has failed to satisfy the second prong of *Strickland*, the state courts were not unreasonable in denying this claim. *See Walker v. Mullin*, 2010 WL 2294317, at *9 (W.D. Okla. Mar. 30, 2010) (dismissing ineffective

assistance claim for failure to file a timely appeal when petitioner was granted an appeal out of time).

### 2. *Failure to relinquish files*

Petitioner alleges that Mr. Rane failed to turn over his case files to attorney Joseph Riggs.  *Doc. 2* at 11.  The nature of Petitioner's dispute with Mr. Rane is not entirely clear from the record.  It appears that at some point, Petitioner retained or attempted to retain Mr. Riggs as substitute appellate counsel and asked Mr. Rane to turn over his case files to Mr. Riggs.  *See doc. 11*, Ex. R at 30.  On September 30, 2008, Mr. Rane filed an amended motion to reinstate Petitioner's appeal, explaining that Petitioner had requested that Mr. Riggs filed his appeal.  *Id.*, Ex. J ¶ 6.  At some point in 2008 or 2009, Petitioner filed a complaint against Mr. Rane with the Disciplinary Board of the Supreme Court of New Mexico.  *See id.*, Ex. R, attach. no. 20.  Nevertheless, Mr. Rane rather than Mr. Riggs filed Petitioner's appeal.  *Id.*, Ex. L.

Assuming that there is a constitutional right to have former counsel turn over one's case files to new counsel and that Mr. Rane unreasonably violated that right by refusing to do so,[15] Petitioner still fails to demonstrate any resulting prejudice.  Mr.

---

[15] While there is certainly an ethical duty for an attorney to turn over case files of a former client to his new counsel, it is not clear whether there is a corresponding constitutional right and, if so, the scope of that right.  *See Spencer v. Milyard*, 2008 WL 1924900, at *5-*6 (D. Colo. Apr. 29, 2008) (collecting cases indicating that the loss of a case file without a showing of prejudice is not a constitutional violation); *Maxwell v. Florida*, 479 U.S. 972, 477-78 (1986) (Marshall, J., dissenting) ("The right to effective assistance fully encompasses the  client's right to obtain from trial counsel the work files generated during and pertinent to that client's defense.  It further entitles the client to utilize materials contained in these files in any proceeding at which the adequacy of trial counsel's representation may be challenged.").

Riggs did not file Petitioner's appellate briefs—or take any other action on behalf of Petitioner—so he did not need access to Petitioner's case files.  *Cf. Spencer v. Milyard*, 2008 WL 1924900, at *5-*6 (D. Colo. Apr. 29, 2008) (dismissing § 2254 claim based on trial counsel's loss or destruction of petitioner's case file because, *inter alia*, he did not allege prejudice); *Decker v. Roberts*, 2013 WL 1074761, at *14 (D. Kan. Mar. 14, 2013) (dismissing ineffective assistance claim based on counsel's failure to provide petitioner with copies of discovery and the case file for lack of prejudice).  The state courts' dismissal of this claim under *Strickland* was therefore reasonable.

### 3. *Conflict of interest due to Timothy Padilla's representation of both appellate counsel and Judge Brennan*

Petitioner's final argument is that Mr. Rane was ineffective due to a conflict of interest.  *Doc. 2* at 11.  Mr. Rane was represented by Timothy Padilla in the Disciplinary Board proceedings regarding the complaint filed by Petitioner.  *See doc. 11*, Ex. R, attach. no. 20 at 2.  Mr. Padilla also represented Judge Brennan in the criminal proceedings arising out of his arrest for possession of cocaine.  *See id.*, Ex. R, attach. no. 11 at 2. Petitioner appears to suggest that Mr. Rane's advocacy was undermined by his association with Mr. Padilla, who had an interest in protecting Judge Brennan.  *Doc. 2* at 11.

A defendant can demonstrate that a conflict of interest violated his Sixth Amendment right to counsel in two ways.  He can either show that "an actual conflict of interest adversely affected his lawyer's performance," *Cuyler v. Sullivan*, 446 U.S. 335,

350 (1980), or that the alleged conflict of interest resulted in ineffective assistance of counsel under the more general rule of *Strickland*. *See Green v. Snedeker*, 355 F. App'x 146, 148-49 (10th Cir. 2009). Because Petitioner does not specify under which standard he brings his conflict of interest claim, and because the state trial court did not say which standard it used to evaluate the claim, I will consider both.

Under *Sullivan*, "the possibility of conflict is insufficient to impugn a criminal conviction"; a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 350 (emphasis added). The conflict at issue in *Sullivan* involved multiple representation—two lawyers represented three co-defendants who were charged with the same crime but tried separately. *Id*. at 338. The Supreme Court has not extended *Sullivan* to situations in which the alleged conflict arises from a situation other than multiple representation. *See Hyberg v. Milyard*, 436 F. App'x 843, 846-47 (10th Cir. 2011) (citing *Mickens v. Taylor*, 535 U.S. 162, 176 (2002)). This lack of clearly established law dealing with a conflict of interest arising out of defense counsel's representation by another attorney in other proceedings is sufficient to render Petitioner's claim meritless under § 2254(d)(1). *See House*, 527 F.3d at 1016.

Even putting aside the issue of whether the law is clearly-established, the state court's decision to dismiss this claim was not unreasonable because Petitioner's allegations do not demonstrate an actual conflict of interest as required by *Sullivan*. Under the *Sullivan* standard, "[a]n actual conflict of interest results if counsel was forced

to make choices advancing other interests to the detriment of his client." *United States v. Alvarez*, 137 F.3d 1249, 1252 (1998).  "To demonstrate an actual conflict of interest, the petitioner must be able to point to specific instances . . . which suggest an impairment or compromise of his interests for the benefit of another party."  *Id*. (quotation omitted).  Petitioner has pointed to no such specific instances suggesting a conflict on the part of Mr. Rane or evidence that Mr. Padilla influenced Mr. Rane's appellate advocacy in this case.

Whereas under *Sullivan* prejudice is presumed if a defendant demonstrates the existence of an actual conflict of interest that adversely affected his representation, under *Strickland* a defendant must prove that his counsel engaged in objectively unreasonable conduct which prejudiced his case.  *See Green*, 355 F. App'x at 148-51. (comparing *Sullivan* and *Strickland* standards).  Here, Petitioner's contention is squarely countered by the fact that among the fifteen issues raised in Mr. Rane's appellate brief, he argues that Judge Brennan should have been disqualified from presiding over Petitioner's trial due to his cocaine use and potential bias.  *Doc. 11*, Ex. L at 42-43. Petitioner fails to demonstrate how Mr. Rane's lengthy and well-reasoned work product somehow adversely affected his position.  In light of the foregoing, the state courts' dismissal of Petitioner's conflict of interest claim was entirely reasonable.

## VI.   CONCLUSION

I have found that Petitioner is not entitled to an evidentiary hearing or discovery under Rule 6 of the Rules Governing § 2254 Cases.  One of Petitioner's claims is not cognizable in a § 2254 petition and should be dismissed on that basis.  Although the remaining claims are cognizable, I have found that they are meritless and their dismissal by the state courts was neither contrary to nor an unreasonable application of clearly established law.  I therefore recommend that the Court DENY Petitioner's discovery motion, *doc. 22*; GRANT Respondent's motion to dismiss, *doc. 14*; and DISMISS with prejudice Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, *docs. 2, 7.*

_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**